Jackson v. First National Bank.

---

ABRAHAM S. JACKSON, PLAINTIFF IN ERROR, v. FIRST NATIONAL BANK OF JERSEY CITY, DEFENDANT IN ERROR.

1. Where an accommodation note is given, with the understanding that the payee was to deposit it temporarily, as collateral security for a loan to be made to him, and instead of obtaining a new loan, and giving the note to the lender, as collateral, he deposits it with a bank, as security for moneys already owing by him to that institution—*Held*—
   1. That this was not a misappropriation, the accommodation paper effecting the substantial purpose for which it was designed, although the result was not produced in the precise mode contemplated.
   2. In order to constitute a misappropriation of this kind of paper, the misuse must be tainted with fraud.

2. *Duncan, Sherman & Co.* v *Gilbert*, 5 *Dutcher* 521, approved.

On error to the Supreme Court.

This was a suit on two accommodation notes, both dated March 1st, 1874, to run for six months, the one for $500 and the other for $600, drawn by the plaintiff in error to the order of M. Sandford, as payee.

At the trial, Mr. Jackson testified that he made this paper for the accommodation of Sandford, "to be by him deposited, temporarily, as collateral security for a loan to be made to him." It was further shown that Mr. Sandford, being then indebted to the First National Bank of Jersey City, the defendant in error, deposited this note with it, as collateral security to said debt.

For the plaintiff in error, *T. N. McCarter*.

For the defendant in error, *W. Brinkerhoff*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The error assigned for the reversal of this case, is that the note in suit was accommodation paper, and was given for a certain purpose, and was misapplied by the payee. The misapplication alleged consisted in this: the plaintiff in error testified at the trial, that he lent his credit to one Sandford, with the understanding that the note thus made was "to be by him deposited, temporarily, as collateral security for a loan to be made to him." Instead of obtaining a new loan, and giving this note to the lender, as collateral, what Sandford did was to deposit it with the First National Bank of Jersey City, the defendant in error, as security for moneys already owing from him to that institution. The note, therefore, instead of standing as security for a present loan, was placed as security for a past loan, and it is urged that this was a misappropriation that avoided the note in the hands of a party taking it for value, but who was chargeable with notice. But this contention cannot be made to harmonize with the legal rule established on this subject, by this court, in the case of *Duncan, Sherman & Co.* v. *Gilbert*,

5 *Dutcher* 521. That rule is very clearly expressed in the Chancellor's opinion in that case, and is to the effect that a misappropriation does not obtain where accommodation paper effects the substantial purpose for which it was designed, although such result is produced not in the precise mode contemplated, unless there is fraud, or the interest of the surety is prejudiced. In the reported case, the notes were made to the payee, for him to get discounted for his own benefit, in a particular bank, and he used them by putting them on deposit with the bankers, Duncan, Sherman & Co., as collateral, under an agreement with them to keep deposited with them, bills receivable to a specified amount. It was this deviation from the understanding that was declared by the court to be unobjectionable in point of law. The authorities which are cited by the court, and relied upon in verification of the rule thus defined, are so closely applicable to the facts of the present case as to render superfluous an examination of them for the purpose of showing such analogy. The principle underlying this entire class of decisions is this, that in order to constitute a misappropriation of this kind of paper, the misuse must be tainted with fraud. It follows, therefore, that an essential ingredient of the forbidden transaction is an injury to the person who has lost his credit. "In order to constitute a misappropriation of negotiable paper, there must be a fraudulent perversion of the original object and design." In the present case, it is difficult to see how the defendant has been injured by the particular use that has been made of this note. It was given for the general purpose of accommodating the payee, and the particular mode in which it was to subserve that end, was of no account to the maker; whether such payee raised the money upon it, which was the use indicated at the time, and with that money paid off an old debt, or, without the circuity of a new loan, applied the note directly to the satisfaction or security of such old debt, could be of no consequence to the defendant. He lost no right by such a diversion of the paper, nor was he subjected to any additional risk. It is true that if he had known of the pecuniary con-

dition of the payee, he might not have been induced to lend him his credit, but he was not deceived in that particular, for he asked no information upon the subject. He did not inquire even whether the money that it was contemplated to raise was to be used for the payment of debts which were then existing; and, as the money could be applied to the payment of such debts, it seems to me impossible to reasonably deny that, as I have said, the paper could be put to the same purpose.

Upon the above point, the case was properly tried at the Circuit, and also with respect to the question of interest.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, REED, SCUDDER, VAN SYCKEL, CLEMENT, DODD, GREEN, WALES—11.

*For reversal*—None.